Our fifth case of the morning is in Appeal No. 25-1271, Raymond Echevarria v. Darrin Jackson and others. Ms. Shannon? No, Ms. Gonzalez. Yes, Judge. Nice to see you. Whenever you're ready. Good morning, Judge. May it please the Court, Michelle Gonzalez on behalf of Appellant. Judge, the citation that was given to my client was, it stated, refused to sign. And from the beginning, the complainant, or complaining witness in this matter, had called dispatch and continuously refused to give name identification. So it was refused all over the CAD report that the complaining witness was a refused complainant. And so when Officer Jackson arrived to the scene, he states that he met the complaining witness. But on his citation, he's saying refused to sign. And so when he encountered my client, he held him about an hour, I believe, and he threatened him with sticking his dog on him. He had his dog in the car. My client was suffering from post-traumatic stress disorder, and he continually told the officer that that's what he suffered from and that he needed to know what was going on. And if there was someone to identify him about something he did, where is that witness? If the complainant here had signed the citation, would there be enough for probable cause? Judge, I think the complaining witness should have identified my client. There was no identification of Mr. Echevarria. Identified what he was wearing, though. I don't know. There's nothing in the record that he knew him. No. I mean, in terms of saying to the officer, yes, that's him right there looking at my client and saying that's the person. What requires that under the law? For probable cause, you have to have a witness saying that that's the person that committed the crime. So there's lineups, show-ups, judge, and that didn't happen here. He just gave a clothing identifier, I believe, in the phone call, and even the clothing identified did not match my client. It was gray pants and, I think, blue and white striped top. My client had, I think, it was pink and blue and shorts on. So the identification didn't even match. And so even in the police report, after the fact, Officer Jackson writes a police report, and it continually says refuse to sign. So it's all over everything. Then he does his deposition, and he states this complaining witness was going to stick around and sign. And they seem to think that's enough for probable cause to issue the citation. And in Jackson's own deposition testimony, he says, if I don't have a complaining witness, I can't issue a citation, and then I can't tow the vehicle, which is what happened here. They towed the vehicle. My client was forced to get, I believe it was an Uber and several methods of transportation because he was in great distress, so the Uber driver didn't want to continue to take him to, I think it was the precinct where he had to see about recovering his vehicle. And so it took some time, and he even after that time suffered severe traumatic distress that he had to check himself into inpatient care, and he couldn't go on a trip that he originally was going to go on. And after that, he could not work as he used to. So just saying all that, it's just the refuse to sign and not Jackson not knowing that because that person refused to sign and he did not have a complaining witness, for him to even issue a citation and tow the vehicle should not even have happened. But we assess probable cause at the time he's going to write the citation. No, Judge, because the person never identified my client as the person that committed the offense he was alleging. And so there was no probable cause at that point. And for him to issue a citation, not have an identifying witness, there was no probable cause. But he thought he had an identifying witness at the time he did that. It was only after he wrote the citation that he didn't have an identifying witness who would sign it. I believe that's a credibility determination by a jury to decide, do I believe that complaining witness did speak to Officer Jackson, and do I believe that he waited at the beginning of that parking lot that Officer Jackson entered and then saw my client and decided he's the guy? And is it at all true, based on all the documents, saying the complainant refused to even give identifying information about themselves and refused to even stick around to identify my client? And so that's the credibility determination, I think, for a jury, not for a judge, to decide whether all this happened as Jackson said in his deposition, which is what I believe the judge believed was enough to grant summary judgment. Ms. Gonzalez, can I focus on your Fourth Amendment claim? Sure. I understand one aspect of it. One aspect of it is the towing of the car. I get that. Okay? Is there another aspect of it? He did not have probable cause to detain my client. I don't know if it was 45 minutes, an hour. And then the fact that he towed the vehicle. So the Fourth Amendment claim has two components to it. One involves the car. Yes. And the second involves the temporary detention of Mr. Echevarria while the ticket process was going on. Yes, Judge. And the tow of the vehicle, yes, Judge. Okay. Is there anything else to the Fourth – any other aspect of the Fourth Amendment claim? I can't think of it right now, Judge. I don't think so. Okay. Okay. And the car towing is also pursued under a Monell theory? Yes, Judge. Okay. I just believe the jury should have known of the facts, not a judge to decide credibility and facts. And I guess I will reserve for rebuttal, Judge. Okay. Very well. Okay. Ms. Shannon. May it please the Court. Colleen Shannon for the defendants. Summary judgment should be affirmed for three reasons. First, the majority of the issues that plaintiff tries to litigate here have been waived. Second, the material facts are not disputed. And third, the admitted facts establish probable cause are at the very least arguable probable cause. I'll start briefly with the rule violations that shape this appeal. We have an entirely one-sided record because plaintiff chose not to file any response to our statement of material facts. The district court was well within its discretion to deem those facts admitted, and plaintiff doesn't contend otherwise on appeal. In addition to that, plaintiff's filings in this court present a real question as to whether this appeal can even reach the merits. Most notably, he filed an opening brief that didn't contain a single citation to the record or to the district court's opinion. And plaintiff continues to advance a version of facts that have no basis in the record. But even on the merits, this is a straightforward probable cause case. Officer Jackson received a contemporaneous dispatch report that a man had just pulled his pants down and exposed himself on the Bussey North Trail. He was given a detailed description. A white male, about 30 to 40 years old, dark hair, 6 feet tall, wearing a blue and white striped tank top, gray sweatpants, and driving a gray Honda CRV. When he arrived at the entrance, he was met face-to-face by the complainant, who confirmed that he was the one that made the call and that he was willing to sign a complaint. And that's not disputed below, correct, given the failure to comply with 56.5? Correct. It is not disputed. The complainant told Officer Jackson he would stay at the entrance and wait for him and that the offender was still back there in the woods. Officer Jackson even went over the radio to relay this information to dispatch and the fact that he had a willing complainant and that he was going on to locate the suspect. And Sergeant Spina, the other defendant here, she separately confirmed hearing this over the radio. And it was just moments later that Officer Jackson, in fact, saw a plaintiff exiting the trail in an area that was known for indecent activity. And he was a near perfect match. White male, dark hair, about 6'2", wearing a blue and white striped tank top, gray sweatpants, and walking towards a gray Honda CRV. The plaintiff even admitted that he fit this description. That's enough for probable cause. And it's not negated by the fact that the complainant did ultimately leave before signing the citation. In fact, that's fairly common in fact patterns. Yes, I agree. We see a lot of cases where tipsters prefer to remain anonymous or they leave a scene for whatever reason. They don't want to be involved in the police. They don't want to be involved with the person that may get arrested. It's not an uncommon scenario. I completely agree. And the probable cause that existed at this point is also not negated by the slight discrepancies in Officer Jackson's memory of what the plaintiff was wearing that day. But even if he had the wrong guy, these same facts establish arguable probable cause, which is all that's needed here for qualified immunity. And this brings me to the central attack in plaintiff's reply, that there were documents all saying that the complainant in fact refused while Officer Jackson had testified that the complainant was willing to sign the complaint. And according to plaintiff, that presents a credibility dispute for a jury. We certainly disagree. And for one thing, that argument is completely waived. It was never raised in this case until for the first time in the reply brief. But even if the court were to consider it, there's no contradiction here in the record. The dispatch records and Officer Jackson's report, they merely reflect that the complainant was unwilling to provide their name to the dispatch call taker. And the citation as well doesn't actually reflect what the complainant told Officer Jackson in person on scene. It does say refuse to sign in the area on the citation to describe the respondent's actions, but the line for the complainant's signature on the citation is actually left blank. And that's consistent with Officer Jackson's report, his radio communications, and his testimony that when he returned to the entrance 45 minutes later, he discovered the complainant had left and wasn't able to get his signature. Officer Jackson did, however, provide a description of this complaining witness in his report. It was actually a very detailed description of what this individual looked like, the type of car that he saw him driving, and we also know that his name was Camille because he had initially called the Forest Preserve District Police and gave his name as Camille before he was then transferred to the dispatch center. That call was actually recorded, and Officer Jackson even confirmed that the voice on the call was the same man that he met with in person that day at the entrance. So not only is there no contradiction in the record, there's absolutely nothing that would have led Officer Jackson to believe the complainant was unreliable or that he had provided faulty information. The administrative code rests on the same probable cause analysis, and it's undisputed that the Forest Preserve District interprets the phrase used during the commission of broadly to include vehicles that are driven to secluded areas to commit the offense. And what's notable here is that this exact ordinance and the exact interpretation were challenged before and upheld by a circuit court judge in 2016. And we're not arguing that that's binding, but it certainly shows that at a minimum these officers were objectively reasonable in relying on that interpretation in 2019. And now because there's no Fourth Amendment violation against Officer Jackson or Sergeant Spina, the Monell claim that was alleged against the Forest Preserve District also fails. And finally, Plaintiff's IAED claim. Assuming this isn't waived, which we do firmly believe this claim has been waived in the district court, but assuming it wasn't waived, this claim is premised on precisely the type of conduct that Illinois law tells us does not qualify as extreme and outrageous. So even crediting Plaintiff's claims that Officer Jackson called him a sicko or a pervert or threatened him with his canine partner, these types of insults and threats don't meet the high bar imposed for such claims. So for all of these reasons, we ask that the judgment be affirmed. And thank you for your time. Thank you, Ms. Shannon. Ms. Gonzalez, you have some rebuttal time if you care to use it. Judge, the Forest Preserve District had a pattern and practice of towing vehicles of individuals at the Forest Preserve. What's the evidence of that? Previous case, Ledesma, I don't know if it's in the record. I believe it is that they did this. Well, the evidence has to be in the record. I have no idea whether they have a pattern or practice of that. I believe it's in the record, Judge. Well, part of the problem for us is you didn't cite to the record in your briefs. I see. And so you say you believe it's in the record, but you're making statements, and the statements that you made in your briefs don't back it up with citations to the record, which violates the rules, but it makes it very difficult to determine what's in and out of the record. I see, Judge. So my position is that a judge can't deem facts admitted when it's in the record. Defense tendered the exhibits. The citation says refused to sign. The CAD report says refused complainant. The police report says refused complainant. It all says that, even though Officer Jackson wants to say in his deposition that he had a willing complainant, but he does say he left that complaining witness at the front of the parking garage or parking lot for 45 minutes. I can tell you that happens. I'm sorry? That happens all the time. Yes. Police officers get 911 calls about a child being kidnapped, and they show up somewhere, and they get a quick description, and then they're out looking for the kid. And that's the same. It happens all day long. It doesn't give probable cause to detain and then tell the VA. Well, it depends upon if the description matches, they find the individual. But it didn't. That's the position, and that's what I'm saying here. Well, I think what concerns me about your position is I don't know if you're saying when the responding officer got to the park and talked to this person, he just should have disbelieved him and turned around and went home. No, Judge. It's a credibility determination by a jury to decide was there even an individual at the front of the lot. Then every single arrest case that we have, and we got shopping carts full of them, would go to a jury. That is not what happens. And that's what I'm saying. This should have gone to a jury. My client never saw a complaining witness. Doesn't matter. That was in his deposition. Doesn't make any difference. And so just the fact that this officer wants to say there was a complaining witness doesn't make it true. And his own reports, and the reports in evidence in this file, says there's a refused complainant. So how do we know there was one there when he arrived, and why did he leave him there for 45 minutes? Why didn't he have him identify my client? And then he could have towed, but he even says, if I don't have a complaining witness, I only can issue a warning. I can't issue a citation, and I can't tow the vehicle. He says it in his own deposition, and that's what happened here. And that's why I think it should have gone to a jury. Thank you, Judge. Okay. You're welcome. Thank you. We will take, Ms. Shannon, thanks to you as well, we'll take this appeal under advisement.